Phillip Paul Weidner
Phillip Paul Weidner & Associates, Inc.
330 L Street, Suite 200
Anchorage, Alaska 99501
(907) 276-1200

Robert C.E. Laney (Local Counsel)
Ryan, Ryan, Johnson & Deluca
80 Fourth Street, P.O. Box 3057
Stamford, CT 06905
(203) 357-9200

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT CONNECTICUT

| | |
|---|---|
| CONSTANTIN PETROV GRAF von SPEE, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| ) | |
| vs. ) | |
| ) | |
| WILHELM GRAF von SPEE, et al., ) | Case No. 3-05-CV-01488-JBA |
| ) | |
| Defendants. ) | |
| _____ ) | |

**PETROV PLAINTIFFS' SURREPLY TO VON SPEE DEFENDANTS' REPLY
MEMORANDUM TO PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
PETROV PLAINTIFFS' OPPOSITION TO VON SPEE DEFENDANTS' MOTION[S]
TO DISMISS COMPLAINT FOR FORUM NON CONVENIENS**

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

# TABLE OF CONTENTS

I. INTRODUCTION.................................................................................. 1

II. SURREPLY TO DEFENDANTS' ASSERTIONS REGARDING PLAINTIFFS' CLAIMS
IN THE PENDING ACTION AND THE STATUS OF THE GERMAN LITIGATION. ......................... 4

III. SURREPLY TO DEFENDANTS' FORUM NON CONVENIENS ANALYSIS AS TO
SIGNIFICANCE OF GERMAN COURT'S ADMINISTRATIVE DECISIONS TO DATE ..................... 7

IV. SURREPLY TO DEFENDANTS' POINT I. DEFENDANTS' MOTION TO DISMISS
FOR FORUM NON CONVENIENS SHOULD NOT BE GRANTED. .................................. 9

A. SURREPLY TO DEFENDANTS' CHARACTERIZATION OF THE STANDARDS
USED TO DETERMINE A FORUM NON CONVENIENS MOTION ................................ 9

B. THE VON SPEE DEFENDANTS CONTINUE TO MISREPRESENT THE TRUE
NATURE OF THIS ACTION AND WHY THERE ARE SUBSTANTIAL REASONS FELICIA
PETROV'S CHOICE OF THE U.S. FORUM MUST BE HONORED. ............................. 11

C. SURREPLY TO DEFENDANTS' CHARACTERIZATION OF DEFERENCE DUE THE
PLAINTIFFS REGARDING INCONVENIENCE TO PLAINTIFFS UNITED STATES WITNESSES..... 19

D. SURREPLY TO DEFENDANTS' CHARACTERIZATION OF THE GULF OIL
FACTORS ............................................................................... 22

a. PRIVATE FACTORS ..................................................................... 22
1. EASE OF ACCESS TO SOURCES OF PROOF .................................................. 22

2. WITNESSES ............................................................................ 22

3. OTHER PRACTICAL CONSIDERATIONS THAT WOULD AFFECT THE TRIAL ..................... 23

4. PLAINTIFFS' FINANCIAL HARDSHIP ..................................................... 24

b. PUBLIC FACTORS ...................................................................... 28

1. ADMINISTRATIVE BURDEN ............................................................... 28

V. KIRCH V. LIBERTY MEDIA CORP. IS MISINTERPRETED AND MISAPPLIED BY THE
VON SPEE DEFENDANTS, AND ACTUALLY SUPPORTS PLAINTIFFS ............................. 29

A. THE VON SPEE DEFENDANTS NOW CITE AND MISREPRESENT THE IMPORT
OF KIRCH LIBERTY MUTUAL CORPORATION, SOUTHERN DISTRICT NEW YORK, 2006...... 29

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

B.  THE PLAINTIFFS ARE NOT "FORUM SHOPPING" WITHIN ANY GULF OIL/IRAGORRI/ KIRCH ANALYSIS ................................................................ 31

C.  LACK OF MEANINGFUL DISCOVERY IN GERMANY IS RELEVANT ...................... 33

D.  DEFENDANTS' IGNORE THE FACT THAT IN KIRCH, PLAINTIFFS HAD ALREADY LITIGATED SUBSTANTIVELY AND SUCCESSFULLY ON THE MERITS IN GERMANY. ............................................................................................. 34

E.  KIRCH INCLUDED ISSUES OF GREAT IMPORTANCE TO GERMAN PUBLIC AFFAIRS .................................................................................... 35

F.  THE PLAINTIFFS ARE NOT ATTEMPTING TO USE THIS COURT AS A mere "WAY STATION" FOR DISCOVERY. .......................................................... 36

G.  LOCAL INTEREST IN THE DISPUTE AND APPROPRIATENESS IN USING U.S. CITIZENS FOR  JURY DUTY. ............................................................... 37

IV.  SURREPLY TO DEFENDANTS' POINT II.  THE DOCTRINE OF INTERNATIONAL COMITY FAVORS RETENTION OF THIS CASE IN THE UNITED STATES.  ............................... 39

V.  SUMMARY AND CONCLUSIONS ................................................... 40

## TABLE OF AUTHORITIES

Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1947) ................................................. 7, 31, 32, 40

Iragorri v. United Technologies Corp., 274 F.3d at 75 ....... 9, 10, 16, 23, 24, 31, 32, 33, 40

Kirch v. Liberty Media Corporation, Slip Copy 2006 WL 3247363 (S.D.N.Y.). ............... 7, 16, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37

Mercier v. Sheraton Intern., Inc. 981 F.2d 1345, 1357-58 (1st Cir. 1992). ..................... 28

Norex  Petroleum  Ltd.  v.  Access  Industries,  Inc.,  416  F.3d  146,  155  (2d  Cir. 2005).......................................................................................... 32, 33

Weidner & Associates

330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200  Fax (907) 278-6571

COME NOW Plaintiffs, by and through counsel, Phillip Paul Weidner of Phillip Paul Weidner & Associates, Inc., appearing *pro hac vice*, and Robert C.E. Laney, appearing as local counsel, and hereby lodge/tender/conditionally file[1] the Petrov Plaintiffs' Surreply to von Spee Defendants' Reply Memorandum to Plaintiffs' Memorandum of Law in Support of Petrov Plaintiffs' Opposition to von Spee Defendants' Motion[s] to Dismiss Complaint

## I.   INTRODUCTION

The Petrov plaintiffs in this Surreply will not attempt to address in detail, the numerous errors of the von Spee defendant's position, but simply illustrate for the court, some of the primary misrepresentations and omissions by which the defendants attempt to divert attention from the central issue, namely, the right of Felicia to have her day in Court in a U.S. forum, as to the obvious misrepresentations and violations of fiduciary trust duties by the von Spee defendants, concerning her rights to hundreds of millions of dollars in von Spee family assets, which they have been fraudulently concealing and withholding and converting, and which they still stubbornly refuse to provide to her, as they are obligated to do (forcing her to live in de factor poverty in her final years, denied crucial medical aids).

Her right to such day in Court in the U.S., is crucial, due to the largely insurmountable financial and procedural and logistic hurdles facing her in Germany, such that she can, with this Court's assistance to her co-conservators, marshal and inventory her assets for the Connecticut State Court conservatorsip, and obtain the necessary evidence and information (which the von Spee defendants have been withholding and concealing), to demonstrate and assert her rights as a von Spee heir.

---

[1] A Motion for Leave to File Surreply is likewise filed concurrently herewith.

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

Those rights, which the von Spee defendants, and especially Dr. Maximilian, as assisted by his agents Horst Muller-Langguth and Dr. Richter, have been fraudulently inducing Felicia to "sleep on" for years, and after inquiry by her co-conservators Constantin Petrov and Vladimir Petrov, have been fraudulently misrepresented as "nonexistent", derive from her rights to assets from the estates of her mother Maria, father August, brother Johannes, and traditional trust/fiduciary obligations relating to von Spee family property.

Significantly, the von Spee defendants evolving position shows it is imperative this Court not banish Felicia to a German forum, where there is no meaningful prospect of relief, given the largely insurmountable financial, procedural and logistical hurdles addressed in the Petrov plaintiffs' Opposition to von Spee Defendant's Motion[s] to Dismiss Complaint and Affidavit(s) and Exhibits filed therewith.

The following reasons for denying the request by the von Spee defendants to so banish Felicia are important.

1. As reflected by the enclosed Affidavit of Dr. Hering (Exhibit B at 10 para. 15), and the Affidavit of Phillip Paul Weidner (Exhibit C), although the von Spee defendants had, after the inquiry by the co-conservators, assured said co-conservators that they would not assert statute of limitations or adverse possession defenses in Germany, and that Wilhelm and Dr. Richter would act to rectify any irregularities as to transfers of the family property if so informed, they have now "reversed course;"

2. Irrespective of the precise rights presently due Felicia under the various wills, given German law, as a natural daughter of August and Maria and natural sister of Johannes, she had certain substantial rights to a "forced share" or "mandatory share" of the assets of their estates, even if their wills were interpreted to effectively disinherit her;

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

3.  She was lulled into sleeping on her rights and not assert her "forced share" or "mandatory share," to protect her property interests, by the fraud of the von Spee defendants, who failed to give her proper notice of her rights, and false assurances over the years that Dr. Maximilian was protecting her and her property;

4.  As noted, although the von Spee defendants have until recently, promised not to assert statute of limitations or adverse possession defenses against her, they have now reversed course, and apparently, seek to do so (see, Exhibit C), so as to deny her the mandatory inheritance shares and other rights due her;

5.  Moreover, the von Spee defendants' Motion and Reply, are glaringly devoid of any realistic reference to the hundreds of millions of euros due Felicia from the assets of Maria (see Dr. Hering's Affidavit), assets as to which Felicia is clearly a vested heir, and assets which in all likelihood, have been substantially commingled with the von Spee defendants' U.S. assets;

6.  Likewise, as further detailed in Dr. Hering's affidavit, it is now clear the fraudulent scheme of the von Spee defendants to avoid the proper distribution of the Fideikommiss assets to the family in the late 1940s – 1950s, is in fact the basic reason the properties are allegedly titled in Dr. Maximilian and Wilhelm and thus, subject to Felicia's rights and claims;

7.  However, the von Spee defendants have, as noted, reversed course, and although previously assuring the co-conservators they would rectify any such irregularities as to the transfer of family assets if apprised of same, now seek to avoid doing so by seizing on the dicta of the decisions of the Düsseldorf Court of Appeals decision regarding Felicia Petrov's application for financial aid (dated June 18, 2007), and the decision of the Higher District Court in Bonn regarding Felicia Petrov's application for an Inheritance Certificate for her

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

father August's estate (dated August 3, 2007), and attempting to retain the fruits of their

conversion of the family assets.

The bottom line, is that there is sufficient evidence of fraud as to (a) misrepresentations

(made in the United States and/or Connecticut) to the co-conservators (including actions

involving instrumentalities of U.S. and international commerce); (b) fraudulent representations

to and concealing from Felicia regarding her rights, violations of fiduciary/trust duties and

commingling of trust assets with U.S. assets; (c) fraudulent representations as to oral and/or

written contract(s) (see Exhibit A at 49-50) by the von Spee defendants to provide limited

funds to Felicia/the conservatorship as a "gift" for her desperately needed care and

maintenance (which funds are in fact due her as of right) with now breach(es) of even these

limited promises; and (d) significant rights of Felicia (i.e., as to concurrent rights to assets)

relating to 1) August's, 2) Maria's, 3) Johannes', and 4) Fideikommiss and allodial property,

that it is imperative  her vested right as a U.S. citizen and resident and the preference afforded

her choice of a U.S. forum to seek relief,  not be cast aside and ignored.

## II.  SURREPLY TO DEFENDANTS' ASSERTIONS REGARDING PLAINTIFFS' CLAIMS IN THE PENDING ACTION AND THE STATUS OF THE GERMAN LITIGATION.

Defendants' Reply Memorandum creates an inaccurate portrayal of the status of the

German administrative proceedings.  They misconstrue the decisions (which are not

adversarial, substantive, res judicata, or collateral estoppel), by the German administrative

courts, and apparently still take the erroneous position that the decisions are res judicata and

collateral estoppel herein.  See Reply at 6 (stating "Significantly, all of these issues have been

put before a variety of German courts…").  That is not the case at all.  The decisions by the

German courts are administrative in nature, not adversarial, with no formal evidence taking,

hearings, basic due process, or substantive rulings on the merits, and have no real bearing on

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

this Court's obligation to resolve a dispute concerning U.S. citizen plaintiffs, and defendants brought properly before this Court (with fraudulent contracts for Felicia's care made by defendants within the United States/Connecticut, and whose fraudulent acts and economic extortion as to same touch and concern the United States and Connecticut).

Moreover, although the defendants derisively allege the plaintiffs have "thus far lost every German court proceeding which [on behalf of Felicia Petrov, they have] initiated" (see, Reply at 12), the defendants blatantly ignore the fact the German administrative courts have issued two Inheritance Certificates in favor of Felicia, to wit, as to the estate of her brother Johannes, and her mother Maria.  Defendant's analysis lacks any mention about the Inheritance Certificate issued in favor of Felicia Petrov as to the estate of her mother, Maria Grafin von Spee, which Certificate states that the heirs of Maria were Maximilian von Spee (2/3 share) and Felicia (1/3 share).[2]  It is interesting defendants should conveniently overlook any mention of this Inheritance Certificate, as to which no objections are believed to have been filed. Moreover, given that Felicia has such rights to 1/2 of her mother's estate, and further, is entitled to a certain "forced" share of the family's assets (that is, she is entitled to inherit a certain share of property under German law without regard to devises in family wills), it is incredible the von Spee defendants should assert the nature of the defendants' holdings in the U.S. (which assets of Felicia and properties to which she has trust rights as a beneficiary, rightfully belong to Felicia) are believed to be commingled with the assets of defendants with those rightfully belonging to Felicia Petrov), are not at issue in this case.

---

[2]In point of fact, 1/2 of  Maximilian's 2/3 share, i/e/, 1/3, was held for Johannes and this devolves 1/2  of said 1/3 ,or 1/6 to Felicia, such that she has a vested right to 1/2 of Maria's estate.  Those properties alone are worth Hundreds of Millions of Euros.

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

Concerning the incessant and shrill trumpeting by defendants of alleged "forum shopping" by plaintiffs:

1.   The reality is, as well documented by Dr. Hering and Dr. Martins, there have been no substantive rulings on the merits adverse to the plaintiffs in Germany;

2.   In point of fact, the von Spee defendants have been merely able to defeat discretionary administrative actions in Germany, insofar as, they have been able to present "their side of the story" without any discovery, or due process adversarial hearings, or any witnesses, or testimony under oath;

3.   The von Spee defendants completely ignore the fact Felicia has rights to Maria's estate and Johannes' estate, irrespective of the issues as to the will of August;

4.   Concerning any "adverse" rulings as to financial aid, or inheritance certificates, as explained by Dr. Martins and Dr. Hering, those in no way constitute rulings on the merits;

5.   Similarly, the "Fideikommiss" issues are still open in Germany, as to the fraudulent obtaining of the certificate dissolution of the Fideikommiss and the issues concerning the admittedly fraudulent retransfers from Maria and August to the von Spee defendants, i.e. attempts to obtain retransfer rights, which are a violation of public policy.  The central issues, as to whether it is the re-transfer rights that are void (they are due to fraud and misuse of Powers of Attorney), as opposed to the initial transfers (which were valid), have never been ruled on in any substantive proceeding.

6.   Significantly, the issues as to the fact, that said transfers, via use of limited power(s) of attorney, were outside the scope of the powers of attorney, and thus, were void *ab initio,* and accordingly, the property is still in August and Maria's estates (with a ½ share to Felicia), are also not yet resolved on a substantive basis.

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

Accordingly, the mere fact the von Spee's continue to claim, that there are "15" separate decisions or rulings, etc. has no weight, insofar as, it is the nature of the rulings and not the number that have any relevance as to the von Spee defendants misguided claim of forum shopping.  See also, discussion at 31-38, infra, as to the true nature of "forum shopping" which must be present (and is not here) under Iragorri, Kirch v. Liberty Media Corp., Slip Copy 2006 WL 3247363 (S.D.N.Y.), and Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1947), to be relevant as to defeating the strong preference for plaintiffs' choice of forum.

The defendants also exaggerate and misconstrue the nature of the foreign law to be applied to this case.  Ultimately, this case concerns primarily family trust property, and trust law and fiduciary duties, and the manner in which the defendants undertook (and have in fact violated and continue to repudiate) their fiduciary and trust obligations with respect to Felicia. It is, at its core, a family matter.  The trust property in issue, and the converted profits from same, which have been commingled with von Spee assets, are still due Felicia, given the years of fraud by the von Spee defendants.

**III.  SURREPLY TO DEFENDANTS' FORUM NON CONVENIENS ANALYSIS AS TO SIGNIFICANCE OF GERMAN COURT'S ADMINISTRATIVE DECISIONS TO DATE**

The plaintiffs have not litigated in the German courts in the sense that they have sought substantive remedies there.  Accordingly, and contrary to the defendants' claims, there are no binding decisions from the German courts that will conflict with this case in the United States.

That is, although the defendants attempt to paint the picture, that there is ongoing adversarial litigation on the merits in Germany, and claim that this matter would be a continuation of the present German proceedings, the reality is that the proceedings so far in Germany are anything but substantive and this case has not been presented to a court in Germany for merits based rulings, nor have the plaintiffs sought the substantive relief in the

*Weidner & Associates*
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

German courts they seek here.  This court is free to rule, and should do so, after appropriate discovery.

Plaintiffs have alleged in their Amended Complaint, that Felicia is an heir to her father August's estate, her mother Maria's estate, and her brother Johannes' estate.  With regard to Felicia's rights to her mother Maria's estate, the German courts have issued Inheritance Certificates in favor of Felicia, stating that she is an heir to her mother Maria's estate and her brother Johannes' estate.  Based on the information available to plaintiffs, and as set out in the supplemental Affidavit of Dr. Hering, Maria Grafin von Spee's estate was substantial, and more valuable than that of her father, August.  (See, Affidavit of Dr. Hering at 3).  Thus, contrary to their assertion that  "for her to inherit what she is claiming she has a right to, this Court would--in effect-- have to overrule one or more existing German court decisions and Plaintiffs would then have to get German courts to enforce a U.S. court ruling contravening their own rulings,"  (see, Reply at 18), the German courts have not ruled against Felicia on any substantive basis, and have actually come down on the side of Felicia Petrov as to her mother Maria (whose estate is believed to be more valuable than that of August, her husband) and her brother Johannes, and have issued Inheritance Certificates.

Moreover, the defendants' complaints regarding the administration of the case are exaggerated.  While the reality is that litigation, whether in Germany or in the United States, will undoubtedly be contentious, and it is inevitable that documents will have to be translated and discovery conducted, no matter what court this case is litigated in, the difference is that the plaintiffs will be forced to assume an onerous (and largely insurmountable) burden if this matter is litigated in Germany.  But if allowed to continue, as they should, in their chosen U.S.

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK  99501
(907) 276-1200  Fax (907) 278-6571

District Court of Connecticut forum, they will obtain the necessary information to perfect and assert their rights and will prevail.

In this respect, the plaintiffs cannot pursue meaningful resolution of their case in Germany due to the significant practical, financial, and legal barriers before them (including the costs of litigation, the burden of traveling abroad to litigate, the risks to Felicia's already fragile state of health, etc.) whereas the defendants can litigate just as easily here as in Germany.  Thus, the Court should not be swayed by the defendants' myopic construction of their misguided view of the "complexity" of this matter, but should observe that the burden of litigation will unduly fall heavily on the plaintiffs, and that this burden will prevent U.S. citizen plaintiffs from ever receiving meaningful justice.

The defendants, in arguing that this matter should proceed in Germany, ignore the fact plaintiffs present actionable claims under U.S. law relating to the defendants' fraudulent acts (said acts occurring in the United States, and in Connecticut), and are entitled to pursue relief for those claims here in the United States.  It is anomalous the party injured in the United States via violations of U.S. laws, should be forced to seek relief for those injuries in a foreign court, and where, as here, the plaintiffs cannot litigate in the foreign court, it is unreasonable to banish them to that foreign court, which, for all practical purposes, is inaccessible to them.

**IV.  SURREPLY TO DEFENDANTS' POINT I.  DEFENDANTS' MOTION TO DISMISS FOR FORUM NON CONVENIENS SHOULD NOT BE GRANTED.**

    **A.  SURREPLY TO DEFENDANTS' CHARACTERIZATION OF THE STANDARDS USED TO DETERMINE A FORUM NON CONVENIENS MOTION**

Plaintiffs take issue with defendants' characterization of the standards used to determine a Forum Non Conveniens Motion, and their suggestion that plaintiffs' goals are to

**Weidner & Associates**
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

merely utilize the discovery process in Federal Court as a "way-station," on the road to discovery. (See, Reply at 21, and discussion at 38, <u>infra</u>.).

While defendants agree the Court must give deference to the plaintiffs' choice of forum; the defendants cast aside the import of the federal jurisprudence as to forum non conveniens motions, <u>which require this Court to begin with strong deference to United States citizen plaintiffs suing in a United States forum</u>, and such deference can only then be overcome by a <u>strong</u> showing of significant inconvenience under the <u>Gulf Oil</u> factors, with the burden on the defendants to show same by clear and convincing evidence .  The Second Circuit decision in <u>Iragorri v. United Technologies Corp</u>., 274 F.3d 65, (2d Cir. 2001) does not digress from well established principles.  Indeed, the <u>Iragorri</u> decision stated:

> We are instructed that the degree of deference given to a plaintiff's forum choice varies with the circumstances. <u>We are told that plaintiff's choice of forum is generally entitled to great deference when the plaintiff has sued in the plaintiff's home forum</u>. *Koster v. ( Am.) Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 524, 67 S.Ct. 828, 91 L.Ed. 1067 (1947); *see also Piper,* 454 U.S. at 255-56, 256 n. 23, 102 S.Ct. 252. But we are also instructed that the choice of a United States forum by a foreign plaintiff is entitled to less deference. *Piper,* 454 U.S. at 255-56, 102 S.Ct. 252 ("The District Court's distinction between resident or citizen plaintiffs and foreign plaintiffs is fully justified. ... When the plaintiff is foreign, [the] assumption [favoring the plaintiff's choice of forum] is much less reasonable.").
>
> In our recent cases on the subject of *forum non conveniens,* our Court has faced situations involving a fact pattern not directly addressed by the Supreme Court: a United States resident plaintiff's suit in a U.S. district other than that in which the plaintiff resides. <u>As a full court, we now undertake to apply to this general fact pattern the principles that we find implicit in Supreme Court precedents.</u>
>
> See, <u>id</u>. at 71.  (Emphasis added).

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200  Fax (907) 278-6571

*Iragorri* and its progeny thus stem from a distinct U.S. Supreme Court jurisprudence establishing strong deference for U.S. citizen plaintiffs who file suit in their home forum, which is precisely the case here.  The defendants cannot ignore or defeat this point.

**B.    THE VON SPEE DEFENDANTS CONTINUE TO MISREPRESENT THE TRUE NATURE OF THIS ACTION AND WHY THERE ARE SUBSTANTIAL REASONS FELICIA PETROV'S CHOICE OF THE U.S. FORUM MUST BE HONORED.**

While it, of course, may be necessary for the Court to eventually apply some German Law, and/or possibly for the plaintiffs to seek to obtain further rulings from German Courts, for this Court's guidance and/or assistance (as administrative and/or ancillary actions), once appropriate discovery has been conducted in this matter, the von Spee defendants ignore the fact that the basic fraud in this case occurred 1) from the numerous fraudulent representations over the years by Dr. Maximilian and von Spee defendants to Felicia, (while she was a United States citizen and resident, with communications by Dr. Maximilian to and/or with the United States), that all of her rights would be honored, and her property be available upon her requests, 2) and then the fraudulent misrepresentations made by Dr. Maximilian, Wilhelm, and Dr. Richter, to and/or in the State of Connecticut, to the co-conservators, that she had no rights. As discussed, they have now shown their true colors, via a reverse of course, and an intention to assert statute of limitations and/or adverse possession defenses, as to her forced share rights to property in Germany.

The basic fraud that occurred in the United States included:

1)      The misrepresentations by Dr. Maximilian and his agents to Felicia to her in the United States, as a United States citizen and resident, over the years to prejudice her as to her rights;

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

2)      The actual contacts with, and contracts between, the defendants and the co-conservators in the United States, and Connecticut in particular, both oral and written, entered into as to her care and conservatorship in Connecticut, but which the von Spee defendants reluctantly provided a sum (inadequate) for her care, with a purported right to claim same as a gift, (promises they have now repudiated);[3]

3)      The numerous misrepresentations using instrumentalities of interstate commerce to the co-conservators, in and/or to Connecticut, who were attempting to marshal and inventory her assets for the Connecticut State Court conservatorship.

Accordingly, this basic action is one of seeking the necessary assistance of the Federal Court to allow the co-conservators to obtain the information to assert her rights and marshal her assets, even if it is necessary then, to eventually proceed, with further ancillary actions in Germany, once that information is obtained.

Similarly, while they repeatedly claim Felicia and Vladimir and Constantin have no relevant evidence that is absolutely false.

Felicia is still a competent witness, (as evidenced by Paul Johnson's affidavit) concerning the years of lies by Dr. Maximilian and his agents, and Vladimir and Constantin can testify specifically, not only to the actions of the defendants in Florida to conceal, and defeat Felicia's rights, but the misrepresentations made to them in Connecticut  and the United States in their efforts to obtain aid for her as to the conservatorhsip.

The defendants repeatedly claim that there were "substantive claims made in several proceedings instituted by Plaintiffs in Germany [which have] now become the basis of this lawsuit in Connecticut."  See Reply at 3.

---

[3] See, Exhibit C.

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200  Fax (907) 278-6571

As set out by Dr. Hering, the issue before this court is not simply whether eventually, Felicia would, after full discovery and litigation on the merits, definitely lose as to her asserted rights (to wit, it would be an obvious miscarriage of justice to attempt to dismiss her suit on a quasi-summary judgment ruling without any discovery), but whether she has her rights that needed to be, and still need to be asserted, and whether the defendants have fraudulently misrepresented, and withheld, notice and evidence as to same.

Thus, the defendants attempt to mischaracterize the plaintiffs' position as "contradictory", (Reply at page 4), is in error.

In point of fact, it was for many years, that Dr. Maximilian and his agents lied to Felicia and claimed that her rights were being protected and taken care of, and it was only after the death of her husband Konstantin, upon inquiry by her sons as co-conservators, that Dr. Maximilian and Wilhelm fraudulently represented to the co-conservators she had no rights.

Accordingly, there is absolutely no contradiction by plaintiffs.

Any contradiction, is as to the two different fraudulent positions by the von Spee defendants.

Moreover, it is now clear she was prejudiced as to same, given their belated revealing of, and their belated announcement of, intention to assert statute of limitations and/or adverse possession defense(s), and refusal to now proceed to rectify the results of the inappropriate transfers of family property, notwithstanding their prior promises to do so.

Further, it is inappropriate for the von Spee defendants to claim that they will assert, or win, as to substantive defenses in this action regarding personal or subject matter jurisdiction, since those matters are properly only addressed after discovery, and there has been only limited discovery to date.

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

As noted, the transfers of property to Maria and August (and then allegedly back to them by the misuse of powers of attorneys) are still significant viable issues, as are the Fideikommiss rights.  The transfers of property concerning Maria's estate alone, (as to which without any dispute), Felicia is a vested one-half heir, involving assets in the hundreds of millions of euros.

Moreover, the claims for the defendants that the inheritance certificates rulings are somehow res judicata, or collateral estoppel, are patently false, as evidenced by Dr. Martins and Dr. Hering's affidavits.  It is a similar situation, as to the Fideikommiss dissolution certificate litigation, as well as the financial aid application.

It is, likewise, improper to characterizes Felicia as merely having "derivative" rights as to her father, August, and her mother, Maria.  The point is, she has rights on her own behalf as a von Spee heir, and full-blooded sister to Dr. Maximilian, as well as inheritance rights from the estates and on-going trust/fiduciary duty rights as to the properties that should have been managed for her benefit.

It is also inappropriate for the von Spee defendants to claim that this court cannot apply German Law if necessary.  Frankly, the description(s) of this court's approach to same as a "Cliff's Notes appreciation for such law" and a "10,000" footnote 11 view of this matter (see Reply at 13-14), are rank insults.

Moreover, the von Spee defendants expect this court to accept at face value (with no evidence taking, discovery, due process, or fact finding process), their claims (as to which no discovery has occurred), that August specifically, effectively, and unequivocally, and permanently renounced all his rights to the Fideikommiss property, that the fiduciary contracts were validly exercised to re-transfer properties out of Maria's and August's estates, that the

**Weidner & Associates**
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200  Fax (907) 278-6571

Fideikommiss dissolution certificate was valid, and that Felicia has no rights under the Fideikommiss or allodial property.

None of these issues have been litigated anywhere on a substantive basis, with any actual adversary procedures, or evidence-taking, discovery, or due process hearing, or fact finding, or protection of an oath.

Likewise, the von Spee defendants make the erroneous assertion "the very real possibility exists that any conclusion reached in this Court in favor of Plaintiffs would be unenforceable in Germany)".  See, Reply at 18.  Service has been affected under the Hague Convention, and irrespective of any issues of enforceability in Germany, there may well be hundreds of millions of dollars of assets in the United States that are subject to execution.

The claim the Petrov plaintiffs simply "need only appear in the appropriate court [in Germany], and file a complaint" ignores the reality of the practical impossibility of doing so, given the absence of discovery and the financial and procedural hurdles.

The German opinions, to date, are not res judicata, collateral estoppel, or substantive rulings in adversary proceedings. [4] The von Spee defendants ignore the forced rights/mandatory share issues of German Law, which would be available to Felicia, but for the failure of the von Spee defendants to inform her of her rights, and further their fraudulent inducement of her to sleep on said rights.[5]

---

[4] As noted, it is also simply wrong to say the "German Courts have determined [on any substantive basis]that the operative wills of August, taken together demonstrate that Felicia is not his heir".

[5] One can only ponder why the von Spee defendants would characterize Felicia's efforts to exercise her rights to a day in court, in a United States forum, as a request to "go on a wild, Alaska-style fishing expedition". (See Reply at page 20).  Such language is counter-productive to the practice of law.

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

In a similar fashion, the defendants mischaracterize the plaintiffs' position regarding the possibility, and necessity, of eventually filing certain ancillary actions to give guidance and aid to this court.  The bottom line, is that this action is property bought in Connecticut to assist the co-conservators in inventorying and marshalling Felicia's assets, to obtain appropriate access to documents to do so, and if need be, to then consider filing further actions in Courts in Germany to assist this court, and in turn the Connecticut conservatorship, in seeing that Felicia and her estate are entitled to the rights that are hers.

Further, there is significant interest in the U.S. and Connecticut with this case, given the fraud that was committed in the United States and in Connecticut, the U.S. assets, and the misrepresentations (using U.S. instrumentalities in interstate commerce) to the Connecticut State Court co-conservators and conservatorship to satisfy the Iragorri standard so as to mandate even stronger respect for the plaintiffs' choice of forum.[6]

Moreover, the defendants appear to take the misguided position they merely have to show Germany is a somewhat adequate forum, and they meet their heavy burden to defeat plaintiffs' choice of a U.S. forum.

That misstates the law.  Their burden is to show that the United States is so much of an inconvenient forum (by clear and convincing evidence), that the presumption of honoring the plaintiff's choice should be overcome.  The defendants have not done so.

The defendants misapply and misstate the import of Kirch v. Liberty Media Corporation, Slip Copy 2006 WL 3247363 (S.D.N.Y.). See discussion at 29-38 infra.

---

[6] Curiously, while the defendants ignore the fact that Felicia is a competent witness, (as evidenced by the affidavit of Paul Johnson), they, likewise, ignore the fact Dr. Maximilian is not, given their own position, and evidence they have offered to prevent his deposition in Germany), that he is incompetent to testify.

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

Plaintiffs are dealing with fraud committed in the United States, over the years by lies to Felicia; dealing with fraud committed by lies of the von Spee defendants to the co-conservator(s);  dealing with actual contracts entered into in the United States concerning care of Felicia, which fraudulently misrepresented the monies for which she is due, and constitute economic extortion; and dealing with road-blocking by the von Spee defendants to the co-conservators in their attempts to obtain information and marshal assets in a Connecticut conservatorship.

In a similar vein, the von Spee defendants misrepresent the import of Petrov's footnote 11 to their Memorandum in Opposition, in their discussion at page 46 of the defendants' Reply.

The basic thrust of this action is to assert remedies in the U.S., for fraud committed in the U.S., using instrumentalities of U.S. and Connecticut commerce, and to marshal the rights of Felicia in a U.S. conservatorship (especially as to the extensive commingled U.S. assets of the defendants), seeking discovery due in the U.S. courts to do so.  If, in turn, it is necessary to then file ancillary actions in other countries, that may well aid this court in doing so, that is not the situation painted by the defendants, nor referred in the footnote at 11 of the plaintiffs' Opposition.

Regarding the crucial discovery on the merits that is due Felicia, and must be allowed, the von Spee defendants make the misstatement that "defendants made a diligent search" for those documents (to wit, the documents sought by plaintiffs, and neither provided to them or confirmed they did not exist). That is precisely the kind of information that needs to be explained in discovery.  There are still numerous instances of missing family agreements and other crucial documents that are essential to support Felicia's rights.  Likewise, they attempt to

**Weidner & Associates**
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

divert the court from the focus on discovery necessary, by referring to the fact that there was an initial request made for discovery as to the relevant documents from the family archives. Plaintiffs simply need to access, if possible, the relevant documents in order to examine them to present them to court.  It is foolish to claim that the millions of pages of documents will have to be translated.

The defendants also dismiss the significance of plaintiffs' witnesses, including, Helga Kubasch, Uli Benniwitz, Eugene Meyer, Niles McKee, and Walt Stewart, who in fact, are important to demonstrate the extent of the commingling of the property at issue, i.e., the property due Felicia, with U.S. assets of the von Spee defendants.

Defendants, likewise, make the specious argument that this case should be paid for by a company in Germany to finance litigation, without the defendants having access to the crucial discovery in order to demonstrate the merits of their claims.[7]

Defendants, likewise, make the astonishing statement that, although Constantin and Vladimir are conservators of Felicia and have duties to the Connecticut court in that regard, and "they need to inventory and marshal their assets.  They provide no explanation of evidence why that is a reason for this court keeping this case".  See Reply at 47.

In point of fact, the Connecticut conservatorship, and the duties and obligations to the Connecticut Court of marshalling those assets, the nature of the misrepresentations made to the co-conservators as to Felicia's need for care, and the necessity of obtaining the information to assert those rights, if need be, throughout the world, is precisely why it is important for this

---

[7] They also claim, that defendants herein, have agreed to "waive the bond", without any acknowledgment of the fact that, nonetheless, there are tens, and possibly hundreds of thousands of dollars due in prepayment of court fees, to file a substantive suit in Germany.

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200  Fax (907) 278-6571

court to keep the case.  If the court does not, those rights and assets of Felicia will never see the light of day.

The defendants, likewise, erroneously claim the U.S. has no interest in this case; nor do U.S. jurors.  This ignores the significant interest of the U.S. and Connecticut forum in the case, given the fraud occurring here, the U.S. assets, the U.S. conservatorship, and the fact that Felicia is a US citizen living in poverty due to the fraud committed upon her by von Spee defendants.[8]

Finally, defendants ridicule the fact plaintiffs have not significantly addressed the von Spee defendants premature motions concerning seeking to dismiss certain defendants, or the questions of private right of actions as the 13th cause of action.  Those motions are not properly ripe.  There has been no discovery, and defendants have been resisting discovery as to same, and it is not proper to argue those, or address them, at this time; nor should the court reach them.

Moreover, defendants, likewise, ignore the fact their comity arguments have no merit, especially as there have been no substantive rulings on the merits to date, nor discovery, and under the case law, these issues deserve separate analysis of same.

**C.  SURREPLY TO DEFENDANTS' CHARACTERIZATION OF DEFERENCE DUE THE PLAINTIFFS REGARDING INCONVENIENCE TO PLAINTIFFS UNITED STATES WITNESSES.**

The defendants continue to incorrectly maintain there are no witnesses in this forum or the United States who have knowledge of the events complained of in the plaintiffs' Amended

---

[8] The defendants, likewise, make the astounding claim that they have given hundreds of thousands of dollars to Felicia, which the von Spee defendants in turn claim presumably (with no evidence or proof) had been used for legal fees and investigations.  In point of fact, they have denied her crucial help to relieve her suffering. (See, Exhibit A herewith).  None of the limited funds advanced  by the von Spee defendants as a "gift" have been used for legal expenses or investigation.

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

Complaint, and the documentary evidence does not exist in Connecticut or the United States. Defendants appear to take the position there are no witnesses who can testify as to anything substantive, since those individuals who were involved in creating the family wills are now deceased.  This is, however, only one narrow part of the entirety of the witness testimony relevant to this case.  Plaintiffs have complained Felicia Petrov was denied her right to inherit property from the estates of her father and her mother, and in fact, was denied her right to inherit certain property as a "forced share," that is, a mandatory inheritance, and was lied to (and notice and information concealed) by the von Spee defendants.  Moreover, the property to which she is entitled is still in the control of the von Spee defendants, who have established considerable property interests in the United States, and have most likely commingled her property with theirs in the United States.  There is considerable witness testimony as to the defendant's actions in the United States, that is, their communications with plaintiffs, their conduct in the United States, and their business and property interests.

It would be fundamentally unfair to require the plaintiffs to travel to Europe for the purpose of litigation, imposing upon them the onerous burden of such inconvenience, in light of the fragile state of health of Felicia Petrov.[9]   (Note that despite the defendants' assertions to the contrary, she still is a competent and critical witness). The defendants on the other hand, travel frequently, and are no more inconvenienced by international travel to the United States for business as they are for pleasure.

It is a blatant insult by defendants, without any semblance of basic sensibility, to assert the plaintiffs' convenience in having the case in Connecticut, is merely one of opportunity to

---

[9] In contrast to Felicia, (who is a competent witness), while Dr. Maximilian is now alleged by defendants, to be possibly available as a witness, he did not testify at his deposition in Germany, since it was clear to defendants that he could not do so, and they presented medical evidence he is mentally incompetent to so testify.  Once again, they reverse course.

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

engage in "spectatorship."  [See, Reply at 24 n. 16, stating "… having Plaintiffs' case litigated in a Connecticut court will not be any more convenient than if it were conducted in Germany (except it might make it more convenient if Constantin, who lives in Connecticut, <u>wants to go to Court as a spectator)</u> (Emphasis added)].  The reality is defendants created the circumstances which now prevent the plaintiffs from pursuing meaningful resolution in Germany (that is, lying to Felicia Petrov and her co-conservators, misleading and withholding information as to Felicia's rights, and causing Felicia Petrov to become a veritable destitute,[10] dependent on State of Connecticut and/or federal assistance for her basic care needs, and dependent on her family for support), and then posit the absurd conclusion that plaintiffs will suffer no more inconvenience if they litigate in Germany than if they litigate in Connecticut.  The reality is that litigation in a foreign court would be utterly inconvenient for plaintiffs, burdensome, and prohibitive such that they cannot meaningfully access judicial redress there.  On the other hand, the defendants have not shown the inconvenience they would suffer if this case were litigated in the United States.  Certainly, they would not suffer any significant financial hardship in this regard, nor would they be disadvantaged by having to litigate in a country in which they do extensive business, and in which they have enjoyed and continue to enjoy the benefits of major business and real property interests and ownership, and the use and enjoyment of U.S. laws.

It is also a blatant insult by defendants to state plaintiffs' interests in this matter are "derivative" and are "diluted."  Felicia Petrov is not a deceased person.  She is alive and continuing to suffer from the conduct of the von Spee defendants, and her interests are anything but "diluted."

---

[10] Note that it was necessary to use some of the funds from her husband Konstantin's estate to seek the information to the von Spee defendants have been withholding.

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

Moreover, an overwhelming number of witnesses exist in the United States and this case would be better heard here, where the witnesses are amenable to this Court's subpoena power and where the costs of producing the witnesses are more feasible for the plaintiffs.

**D. SURREPLY TO DEFENDANTS' CHARACTERIZATION OF THE <u>GULF OIL</u> FACTORS**
    **a. PRIVATE FACTORS**

**1. EASE OF ACCESS TO SOURCES OF PROOF**

The plaintiffs seek production of the "essential documents," i.e., such documents which would also be produced pursuant to defendants' mandatory disclosure requirements, wwhich can easily be produced in the U.S.  Thus, contrary to the defendants' exaggerated claims, the plaintiffs merely seek what they are entitled to in this litigation.  The defendants' claims of inconvenience are exaggerated in light of the technological advances which make production of documents from abroad relatively easy, and electronic transfer of documents commonplace.

**2. WITNESSES**

The defendants' complaints regarding the value of witness testimony are not well founded, as the plaintiffs' U.S. based witnesses are expected to testify as to substantive issues, including the defendants' fraudulent and culpable contacts with the United States, and such conduct with respect to Felicia Petrov.

The defendants attempt to misguide this Court, by denigrating the quality of plaintiffs' witnesses in their case (and outright falsely casting Felicia as incompetent to testify), and stating that there are no witnesses, with the exception that they believe that those individuals with "first hand knowledge of the alleged fraudulent misconduct at issue" would be Maximilian Graf von Spee (who in point of fact defendants claim is incompetent), Wilhelm Graf von Spee, and Dr. Richter (who can easily travel to the U.S. as they often do).  See, Reply at 37.  They fail to mention that Maximilian is evidently completely incompetent to testify.

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

Felicia Petrov however, is not.  Although she suffers from her medical problems, she has distinct moments of lucidity where she is communicative.  (See, Affidavits of Paul Johnson and/or Constantin Petrov)  Moreover, Vladimir and Constantin Petrov have firsthand knowledge about this matter based upon their own familiarity with the course of historical family events, and the information gleaned through contact with the von Spee family and Felicia Petrov and family documents.  Vladimir and Constantin Petrov also have first hand knowledge about the oral and written agreements made between them and the von Spee defendants (made in and/or touching and concerning Connecticut and the United States) regarding Felicia Petrov's care (to wit, evidence of fraud and extortion), her rights to property, and the existence of certain family documents.  Constantin Petrov has firsthand information relating to events taking place in Florida, and the culpable conduct of the U.S. defendants to deny Felicia her rights after Felicia Petrov's husband died and Wilhelm and Lorraine von Spee went to see her.  Thus, it cannot be said that plaintiffs' witnesses do not possess firsthand knowledge of relevant information.

The defendants fail to show how their witnesses will be burdened significantly by litigation proceeding in the United States over Germany.  Again, Wilhelm and Dr. Richter are able and ready to travel, are unencumbered by the burden of caring for a fragile and destitute Felicia Petrov, and are accustomed to international travel, including to the United States. Vladimir and Constantin Petrov do not have that same freedom, and will suffer a severe burden if required to travel to Germany to present their case there, in addition to the financial and other practical and legal barriers associated with litigating in Germany.

**3. OTHER PRACTICAL CONSIDERATIONS THAT WOULD AFFECT THE TRIAL**

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK  99501
(907) 276-1200 Fax (907) 278-6571

Contrary to the defendants' continued complaints regarding translation of documents, the plaintiffs do not seek unwarranted discovery, but only the essential documents, which are appropriately subject to disclosure by defendants and must be produced via voluntary mandatory disclosure and/or basic discovery on the merits. These documents will be necessary in any forum the plaintiffs litigate in, and certainly, translation will not be relatively burdensome when conducted as to certain critical documents. Again, this seems to be an exaggerated complaint intended by defendants to focus the Court's attention on but one aspect of the <u>Iragorri</u> analysis. In this respect, the <u>Iragorri</u> sliding scale approach requires the defendants make a strong showing of inconvenience in order to justify a dismissal on forum on conveniens grounds. The Court must "balance the greater convenience to the defendant of litigating in its preferred forum against any greater inconvenience to the plaintiff if the plaintiff is required to institute the suit in the defendant's preferred foreign jurisdiction." See, <u>Iragorri v. United Technologies Corp.</u>, 274 F.3d at 75. The defendants' complaints about the hardship associated with translation simply do not meet the <u>Iragorri</u> criteria as a significant source of inconvenience, particularly when compared to the inconvenience the plaintiffs will suffer if required to litigate in the foreign forum.

### 4. PLAINTIFFS' FINANCIAL HARDSHIP

The reality is that Felicia is functionally destitute (due to denial and withholding from her by the defendants of her assets), and that there is little, if any chance, that a German court will grant financial aid to the plaintiffs in this matter. Dr. Hering has explained the reason for this as one based primarily on the magnitude of this case. He stated in his initial Affidavit:

> I have never seen or heard of a case involving a subject matter value of several million Euros in which government assistance was granted. Obviously because of the financial dimensions of the claims at issue

here, it is difficult to imagine that a court would grant government assistance unless the claim was 100 percent clear.

See, initial Affidavit of Dr. Hering at 9-10.   Even the defendants' offer to waive the bond for their attorneys' fees does not make a noteworthy difference to the plaintiffs since there are still the significant sums due pre-filing as court fees, and the burdens of litigation will be so extraordinary as to make this waiver something of token value rather than anything truly meaningful.

With respect to the defendants' characterization of the plaintiffs' inability to pay for litigation in Germany, the defendants' complaints that plaintiffs have not shown their financial inability to litigate in Germany are not well taken.   The reality is that defendants are fully aware of the plaintiffs' financial situation, as the von Spee defendants are related to the plaintiffs, and are aware of the plaintiffs' general economic position.   As they are family, it is incredible that the von Spee defendants should feign ignorance about the significant financial limitations of the plaintiffs, especially since the plaintiffs have been requesting the von Spee defendants' financial assistance for years on behalf of Felicia Petrov (pleas for help for her critical medical care, which has now fallen on deaf ears; see Exhibit A).

In an amazing display of gall, the von Spee defendants seek to gain a tactical advantage by referring to the fact it was necessary for the co-conservators to use certain limited resources available from their deceased father Konstantin Petrov's estate to seek information that the von Spee defendants, in turn, were misholding and misrepresenting, as to Felicia's rights.

The reality of the progression of this case is as follows:

1.      Constantin and Vladimir Petrov's father, Konstantin, died in 2000, with limited funds in his estate; the von Spee defendants, including Wilhelm and Lorraine, showed up in Florida and engaged in activities, whereby in all likelihood, not only did they try and interfere

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

with the financial affairs of Felicia and the estate, but may well have engaged in conduct to obtain and destroy documents, as to Felicia's rights;

2.     Constantin Petrov, as a co-conservator, with Vladimir Petrov, being duly appointed to the Connecticut State Court conservatorship, made proper inquiry to Wilhelm and Dr. Maximilian as to Felicia's rights; they were consistently lied to, sandbagged and obstructed as to information as to said rights and funds requested by them for Felicia's desperately needed care;

3.     Felicia had exceptionally limited funds since the von Spee defendants were withholding her property;

4.     In order to attempt to discharge their obligations as co-conservators, they attempted to marshal and inventory her assets and rights;

5.     It was necessary to use some limited funds from Konstantin's estate to do so;

6.     It was necessary to do so, precisely because the von Spee defendants were withholding information and committing fraudulent misrepresentations as to the extent of Felicia's rights;

7.     While some limited information has been obtained, there is significant information still to be obtained, via discovery and depositions, as to the full extent of the fraud and rights and assets affected by same;

8.     Felicia has, literally, been reduced to "begging" from the von Spee defendants for funds for assistance;

9.     Over the years, the von Spee defendants insisted that there be agreement to and/or a signing of "contract(s)" by which they reserved the right to claim that any funds that they were advancing were mere "gifts", which involved actionable acts of fraud, and as to

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200  Fax (907) 278-6571

which threats to cut off aid if rights were as asserted constitutes economic extortion.  (See, Exhibit A);

10.     Said oral and written contracts as to such care, were made in and/or to Connecticut by the defendants,  and facilitated by the use of United States instrumentalities of interstate commerce, and constitute evidence and acts of fraud and extortion;

11.     The von Spee defendants initially committed economic extortion by threatening Felicia and the co-conservators, regarding cutting her off from the sums they were advancing if they continued to seek information to assert her rights, and in fact, carried through on those threats, to wit, they initially were advancing $18,000 a month, and cut it to $6,000 a month, and then cut it to zero ($0);

12.     The von Spee defendants continue to withhold the hundreds of millions of dollars due Felicia, turned a deaf ear to her suffering, and she has been aided to the extent possible for the co-conservators, from their limited funds, but now is on Medicare/Medicaid;[11]

Likewise, the defendants' claim plaintiffs are already litigating in Germany are unfounded.  The plaintiffs' actions in Germany have not been substantive actions, and have not

---

[11] Note that after the von Spee defendants cut the necessary aid from $18,000 to $6,000 a month on Christmas Eve, 2005 (see, Exhibit A at 58-59), and then further, cutting it to zero ($0) early in 2007, due to the resulting lack of necessary assistance and aids, she suffered a fall and significant injuries.  Despite the von Spee defendants' insistence over the years that they had a right to full information, as to her medical status, applications for government Medicare/Medicaid aid, etc. and despite the compliance by the Petrov plaintiffs, with their insistence on detail for information, for many months now, they have simply refused to provide even $1 toward necessary aid (even though they knew she is in desperate need of help).  See, Exhibit A.

They now claim that they have advanced "hundreds of thousands of dollars" to her, which they claim allegedly had been used to file lawsuits against them, which is simply as false as the rest of their fraudulent misrepresentations.  The truth is, that no monies whatsoever, that were reluctantly provided as a "gift" by the von Spee defendants, to Felicia for medical care, have been used in any fashion for any litigation or investigation.

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

required the type of financial or personal investment that such a merits based litigation would require of the plaintiffs. The defendants know this, and know the difference between a merits based litigation and trial as opposed to administrative proceedings before the German courts.

**b. PUBLIC FACTORS**

    **1. ADMINISTRATIVE BURDEN**

The defendants' complaints about administrative burden overlook the reality of this litigation. A German forum would likely face similar administrative burdens to that this court would, in this type of case (in addition, the plaintiffs would bear the burden of litigation in the German forum on a more significant level than the defendants would if this matter remained in the U.S.) That is, essential documents would be necessary for the prosecution of the plaintiffs' case (even assuming of course, that such discovery would even occur in Germany). Moreover, translators would be required- for the English speaking witnesses to appear. Contrary to the defendants' claims, the nature and extent of Felicia's rights to property would need to be unearthed in a German forum, including the significant property interests in the United States. Thus, a German court would face similar practical burdens in administration.

This Court may focus on a comparison of the differences between this Court and the German court's administrative burden. See, <u>Mercier v. Sheraton Intern., Inc</u>. 981 F.2d 1345, 1357-58 (1st Cir. 1992). As to this, the defendants have still not made a showing that the German court would be able to dispense justice in a more efficient manner since their comparison hinges on the progress and pace of the administrative actions (not merits based, adversary litigation). [12]   The defendants cannot successfully combat the plaintiffs' choice of

---

[12] Note that the defendants again attempt to compare the German administrative proceedings to actual merits based, adversary litigation. This is an incorrect comparison. Thus, the defendants' comparison of the time for administrative decision making to take place should not

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

forum simply because administrative burdens exist.  They exist on some level in any matter.

Accordingly, the defendants have failed to meet their burden.

In similar fashion, the von Spee defendants' characterization of the plaintiffs' position

regarding the possibility, and necessity, of eventually filing certain ancillary actions to assist

this court is misstated.  The bottom line is that this action is properly brought in Connecticut to

assist the co-conservators in marshalling Felicia's assets, to obtain appropriate access to

documents to do so, and if need be, to then consider filing further actions in Courts in Germany

to assist this Court, and in turn, the Connecticut conservatorship in seeing that Felicia and her

estate receive the rights to which they are entitled.

**V.  KIRCH V. LIBERTY MEDIA CORP. IS MISINTERPRETED AND MISAPPLIED BY THE VON SPEE DEFENDANTS, AND ACTUALLY SUPPORTS PLAINTIFFS**

**A.  THE VON SPEE DEFENDANTS NOW CITE AND  MISREPRESENT THE IMPORT OF KIRCH LIBERTY MUTUAL CORPORATION, SOUTHERN DISTRICT NEW YORK, 2006**

A careful analysis of <u>Kirch v. Liberty Media Corporation,</u> Slip Copy, 2006 WL

3247363 (S.D.N.Y.), and the principles annunciated therein, in fact, support the plaintiffs'

Opposition to the von Spee defendants' Motion[s] to Dismiss.

A lynch pin of the von Spee defendants' Reply to the Petrovs' Opposition to Motion[s]

to Dismiss is their strong reliance on <u>Kirch.</u>

At the outset, it must be noted that <u>Kirch</u> is merely a decision of a U.S. District Court

and has no binding precedent.

However, in point of fact, careful analysis of <u>Kirch</u> and the principles and cases cited

therein reveal that <u>Kirch</u> not only supports the Petrovs' Opposition to the Motion to Dismiss

for Forum Non Conveniens, but is guidance for this court to deny defendants' motion.

---

be taken as an accurate estimation of the German courts' ability to hear this case, or time
necessary to do so, as to substantive issues.  See, Reply at 45 n.28.

That is, when one focuses on the actual facts of <u>Kirch</u> (as any court, and thus, this court must do in a Forum Non Conveniens Motion), and considers the precise holdings therein, in light of said facts, it is apparent that the holding in this case should be that the Motion[s] to Dismiss should be denied.

Significantly, the plaintiffs in <u>Kirch</u> (as the sole remaining plaintiffs after the Second Circuit had dismissed numerous claims of the initial parties), were not United States citizens, but were, actually, exclusively German citizens and residents, to wit, Dr. Leon Kirch, individually, and his assignee of KGL Pool GmbH and the International Television Company.

While the <u>Kirch</u> Court did state in dicta that, given the fact the foreign German plaintiffs were nationals of Germany, with a reciprocal treaty to the United States that provided for full access to each other country's courts, there should be no less regard afforded their choice of New York forum fully because they are foreign, the court went on to hold:

> <u>As the remaining plaintiffs in this case are citizens and domiciliaries of Germany, we can discern no reason why the consideration of all aspects of this dispute by a German forum would be inconvenient, difficult, or costly for the plaintiffs.  This is especially so given their previous and successful German litigation.</u>

See, <u>id.</u> at 8.  (Emphasis added).

Significantly, there was very tenuous connection to the United States in the <u>Kirch</u> matter.  As the court observed:

> To support their position that the action should remain here, plaintiffs submit that the "*key acts* giving rise to plaintiffs' claims-Breuer's defamatory interview and the formulation of the conspiracy-took lace in New York."  Pl. Suppl. Mem. At 3 (emphasis in original).  We cannot agree with this assessment.  Although it is true that the interview plaintiffs focus on took place in New York, <u>this was little more than happenstance</u>:  Dr. Breuer was in town attending the World Economic Forum, the interview itself was <u>conducted in German</u>, and Dr. Breuer's statements were broadcast via German media outlets.

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

See, id. at 8.  (Emphasis added).

In contrast, the instant case involves Felicia Petrov, who is a United States citizen and resident and ward of the Connecticut court, Constantin and Vladimir Petrov, who are co-conservators of the Connecticut Court, and are United States citizens and residents, and moreover, acts of fraud and economic extortion occurring in the United States involving assets in the United States, said acts, not only committed in the United States, but directly touching and concerning the Connecticut court conservatorship.

Likewise, the Kirch court, in addressing the interest of Germany in the litigation, stated:

> Applying these factors to the case before us, we conclude that the plaintiffs' choice of this forum is not to be afforded great deference, in light of the inherently German nature of this dispute.  As described by the Second Circuit, this case turns on an "allegedly defamatory statement… presented to us in the form of an English translation of an interview conducted in German, couched in tentative and nuanced phrases, about events primarily affecting the German media and German persons and entities, and disseminated initially-and in large part-to an audience of German bankers and financiers."  Kirch, 449 F.3d at 403.

See, id. at

The differences in this case are important.

**B.   THE PLAINTIFFS ARE NOT "FORUM SHOPPING" WITHIN ANY GULF OIL/IRAGORRI/ KIRCH ANALYSIS.**

It is clear from Kirch, that the von Spee defendants unnecessary and loud trumpeting of claims of "forum shopping" is misguided.

First, the court is respectfully reminded, there is no forum-shopping in this case, since the von Spees claim(s) that the plaintiffs herein, have lost on the merits as to alleged substantive rulings on the merits in Germany are simply false.

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200  Fax (907) 278-6571

Moreover, the Kirch court, as to the forum shopping issue, in light of the Second Circuit's reference in Iragorri, to same, clarified that the purported forum shopping that would have to be present would either have to be "attempts to win tactical advantage, resulting from the local laws that favor the plaintiffs' case",[not present in this case], or "habitual generosity of juries in the United States", [not present in this case], or the "plaintiffs' popularity or the defendants unpopularity in the region," [not present in this case], as previously enunciated by the Supreme Court in Gulf Oil.  See, Kirch at 4 n.8.

There could be no claim that plaintiffs in this case are seeking to take advantage of local laws that favor their case, since they are simply asserting rights under well established principles of trust and fiduciary duties, which exist in both forums, and further, seeking relief for fraud and economic extortion claims.  Concerning any claims based on United States laws, it is precisely because there are violations of United States laws using interstate and international instrumentalities of commerce that they have a right to do so.

Note further, the Kirch court recognized, as to any attempt by a defendant (as here, by the von Spee defendants) to seek to escape on forum non conveniens, using alleged grounds to, in turn, raise the spectator of "forum shopping", as referenced in Iragorri and Norex Petroleum Ltd. V. Access Industries, Inc., the defendants burden requires specific evidence of actual attempts to seek favorable substantive advantage under the different law in the United States forum [not present here].

In Norex at 416 F.3d 146, 155 (2$^d$ Cir.2005), as referenced by Kirch [which in turn, quoted Gulf Oil v. Gilbert, 330 U.S. 501, 508 (1947)], it was reiterated, that as to a claim of "forum shopping", there had to be evidence of "plaintiffs pursuit", not simply of justice, but of "justice blended with some harassment", which is obviously is not at issue here, since the

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK  99501
(907) 276-1200  Fax (907) 278-6571

plaintiffs merely seek to assert rights due Felicia and the conservatorship under United States law, given her vested rights as to assets in the United States and Germany. See, <u>Kirch</u>, 2006 WL 3247363 at 4.

The <u>Norex</u> court also quoted <u>Gulf Oil</u>, to the effect, there had to be evidence of "attempts to win a tactical advantage, resulting from local laws that favor the plaintiffs' case", [not here], or the "habitual generosity of juries in the United States or in the forum district" [not here], or the "plaintiffs' popularity … in the region", [not here], or "inconvenience and expense to the defendant resulting from litigation in that forum", [not here].  See, <u>Norex Petroleum Ltd. v. Access Industries, Inc.</u>, 416 F.3d 146, 155 (2d Cir. 2005).

The <u>Norex</u> court went on to state that:

> While a district court is not required to address each of these factors specifically in exercising its considerable discretion to resolve a *forum non conveniens* motion, <u>where, as in this case, a court references a single factor, geographic convenience, to the exclusion of others more supportive of plaintiff's forum choice, a legal concern arises as to whether its exercise of discretion was properly directed to the application of *Iragorri* 's sliding scale of deference.</u>

See, <u>id</u>. at 155.  (Emphasis added).

Further, in <u>Norex</u>, even though the court went on to indicate there might have been, in that case, (unlike this case), some actual evidence of forum shopping, nonetheless, the other proper reasons for bringing the suit in the United States outweighed any justification to dismiss for forum non conveniens.  See, <u>id</u>. at 155-56.

C.    LACK OF MEANINGFUL DISCOVERY IN GERMANY IS RELEVANT

While plaintiffs have properly asserted, one of the reasons for the injustice that would result, if they were banished to Germany, is the effective denial of their right to assert substantive claims in Germany, due to the financial hurdles and the discovery hurdles, the

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200  Fax (907) 278-6571

<u>Kirch</u> court did not hold, as the von Spee defendants appear to claim, that the absence of such

discovery is irrelevant.  The <u>Kirch</u> court merely held:

> <u>Second, even recognizing differences in the systems, "some
> inconvenience or the unavailability of beneficial litigation procedures
> similar to those available in the federal district courts does not [per se]
> render an alternative forum inadequate."</u>  *Blanco*, 997 F.2d at 982
> (citing *Borden, Inc. v. Meiji Milk Products Co., Ltd,* 919 F.2d 822, 829
> (2d Cir. 1990)

> See, <u>Kirch</u>, 2006 WL 3247363 at 6. (Emphasis added).

Accordingly, while it may be that some inconvenience regarding discovery, does not

render Germany invalid, per se, it is clear, that in the overall balancing test, to ascertain if the

von Spee defendants have met their heavy burden to overcome their presumption of a United

States forum for Felicia Petrov, that the practicality of the lack of meaningful discovery,

(especially as to discovery regarding family documents, agreements, and evidence of years of

fraud and withholding benefits) is relevant.

### D.   DEFENDANTS' IGNORE THE FACT THAT IN <u>KIRCH</u>, PLAINTIFFS HAD ALREADY LITIGATED SUBSTANTIVELY AND SUCCESSFULLY ON THE MERITS IN GERMANY.

The <u>Kirch</u> court held it especially significant, that, in fact, <u>the plaintiffs therein, had</u>

<u>already been successful on two related lawsuits in Germany, and in fact, had obtained a</u>

<u>judgment on the merits.</u>

Specifically, the court held, as to the interview in question:

> <u>On January 24, 2006, the *Bundesgerichtshof* ("BGH"), Germany's
> Federal High Court, issued a final decision with regard to the Deutsche
> Defendants' liability under German law.</u>  Certified Translation of BGH
> Decision ("BGH Decision") at 1.  The BGH reversed the intermediate
> appellate court's decision as to Dr. Breuer's liability, <u>holding that the
> Deutsche Defendants "are jointly and severally liable to Plainitff
> pursuant to the rights assigned to it and shall compensate Plaintiff for
> the losses to PrintBeteiligungs GmbH that have resulted and shall result
> from the statements made by [Dr. Breuer] in an interview on the
> Bloomberg TV broadcasting station on February ¾, 2002,"</u> *Id*. at 3-4.

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK  99501
(907) 276-1200  Fax (907) 278-6571

The BGH concluded that Dr. Breuer had violated the German tort rule against interference with an established and operating business. *Id*. at 57-63.

See, <u>Kirch</u>, 2006 WL 3247363 at 3 (Emphasis added).

And the <u>Kirch</u> court further referred to the fact, that there were also proceedings pending, as to same, to wit, substantive proceedings on the merits in Germany:

  **B. The Second German Action-KGL as Plaintiff**

On December 31, 20o05, over a year after we issued our original decision in this case and while plaintiffs pursued their appeal before the Second Circuit, plaintiff KGL, as assignee of a number of KirchGroup companies,(FN7), filed a complaint in Munich district court against the Deutsche Defendants.  <u>The Munich complaint is 143 pages</u> long, written in German, and the Deutsche Defendants submitted a 68 page response in German on May 31, 2006.  *See* Krekeler Decl. II Paragraph 3-4.

See, <u>id</u>. at 3. (Emphasis added).

In fact, the <u>Kirch</u> court went on to hold that:

<u>Here, by contrast, German courts would permit, have permitted, and are currently permitting litigation of the facts in dispute.  Indisputably plaintiff Kirch has already received a judgment in his favor against the Deutsche Defendants, and litigation is proceeding in the case filed by KGL against the Deutsche Defendants in the district court in Munich.</u>

See, <u>id</u>. at 7.

**E. <span style="font-variant:small-caps">Kirch Included Issues of Great Importance to German Public Affairs</span>**

Likewise, it is clear, that not only was the entire case centered in Germany, but there was significant German national interest in same, and the court held:

<u>Germany has an extensive interest in this case, given that Germany's most prominent media conglomerate and its founder is suing Germany's largest bank, asserting that the bank had orchestrated a conspiracy, which included the former Chancellor of Germany, designed to extinguish the German syndicate</u>.   The   motivation   behind   the   alleged   conspiracy between the Deutsche Defendants and the Liberty Defendants was to ensure "<u>dominance of the German cable sector</u>", Am. Compl. Paragraph

**Weidner & Associates**

330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200  Fax (907) 278-6571

27, and to acquire "KirchGroup's prized media assets" in Germany.  *Id.*
Paragraph 55.  In contract, New York has no unique interest in the
matter.

See, <u>id</u>. at 8.

In contrast, in the instant case, there are substantive United States assets, and U.S. and

Connecticut and public policy concerns at issue, given the violations of United States laws, and

that Felicia is a ward of the Connecticut State Court.  Moreover, the "German law" issues in

<u>Kirch</u>, in contrast to the instant case, involved issues of the "preclusive" effect of the prior

German judgment that had already been rendered in Germany, See <u>id</u>. at 8- 9.

Even as to same, the <u>Kirch</u> court specifically recognized that "dismissal on a forum non

conveniens analysis and a dismissal in recognition of principles of international comity are

separate inquiries."  See <u>id</u>. at 9 n. 11.

### F.    THE PLAINTIFFS ARE NOT ATTEMPTING TO USE THIS COURT AS A MERE "WAY STATION" FOR DISCOVERY.

Finally, concerning the von Spees' attempt to draw some type of analogy between

<u>Kirch</u> and the instant case, as to a claim that the Petrov plaintiffs herein, are simply to use this

court as a "way station" on the way to discovery, again, defendants' mis-cite both <u>Kirch</u>, and

the facts of this case.

The <u>Kirch</u> court, having engaged in the broad analysis as to all the reasons why a

<u>foreign</u> <u>nationals'</u> attempt to bring suit in the U.S., <u>on the mere happenstance of one interview</u>

<u>in the United States</u>, and thus deciding, based on such substantive reasons to dismiss for forum

non conveniens, declined to condition its dismissal on allowing full discovery under United

States law.  It was in that regard, that the court then stated:

> Finally, we decline to grant plaintiffs' requested conditions with regard to
> discovery.  We share the view expressed in *Doe v. Hyland Therapeutics*
> *Div.*, 807 F.Supp. 1117, 1132-33 (S.D.N.Y.1992), that "this District

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200  Fax (907) 278-6571

> [should] not become a way-station for plaintiffs world-wide, who choose
> to stop at Foley Square just long enough to obtain a grant of federal
> discovery with their forum non conveniens dismissal."  Permitting the
> extensive discovery requested would only encourage "the filing of suits
> in a forum known to be inconvenient, under hopes of being guaranteed
> certain procedural advantages in conjunction with a dismissal order" and
> would serve "only to waste valuable judicial resources, and further
> congest an already crowded docket." *Id.* at 1133.

See, <u>id</u>. at 11.

In contrast, in this case, there is no such attempt. In point of fact, there are valid reasons why it was essential  this case be brought in the United States.  Once the forum non conveniens motion is denied, proper discovery must be allowed, such that the co-conservators can proceed to discharge their obligations to the conservatorship, and to Felicia, to marshal an inventory of her assets.  That is totally different, than a claim that they are attempting to merely file in an improper forum and seek discovery as a condition to a forum non conveniens dismissal and use this court as a "way station" for discovery.

Moreover, as stated, while plaintiffs have properly asserted that one injustice that would result, if they were banished to Germany, is the effective denial of their right to seek substantive claims in Germany (due to the significant financial hurdles and the discovery hurdles they face there) as noted, the <u>Kirch</u> court did not hold, as the von Spee defendants appear to claim, that the absence of discovery is irrelevant.  The <u>Kirch</u> court merely held:

> <u>Second, even recognizing differences in the systems, "some
> inconvenience or the unavailability of beneficial litigation procedures
> similar to those available in the federal district courts does not render
> an alternative forum [per se] inadequate."</u>  *Blanco*, 997 F.2d at 982
> (citing *Borden, Inc. v. Meiji Milk Products Co., Ltd,* 919 F.2d 822,
> 829 (2d Cir. 1990)

See, <u>id</u>. at 6.

**G.  LOCAL INTEREST IN THE DISPUTE AND APPROPRIATENESS IN USING U.S. CITIZENS FOR JURY DUTY.**

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200  Fax (907) 278-6571

This case touches and concerns the United States and Connecticut.

There is a basic fraud and economic extortion that occurred in this case against Felicia Petrov, in the United States, and in Connecticut, by the defendants.  Her reliance on the promises of the defendants has led to her destitute state- invalid and dependent on the government for basic health care assistance and dependent on her family for support. Connecticut jurors would take an interest in making sure that acts of fraud upon one of their citizens and residents (which fraud resulted in that person becoming dependent on the government for support), were redressed, and that only those who truly did not have the means to pay for their health care used the government's resources.

The plaintiffs take issue with the defendants' claim that allegations of fraud are a "hook by which [plaintiffs] can hang on to the possibility of jurisdiction in Connecticut long enough to try to negotiate a settlement."  See, Reply at 47.  This case is about fraud and economic extortion taking place in the United States, and in particular, in the State of Connecticut. Felicia Petrov resided in the United States, raised a family in the United States, and is spending her last years in the United States.  Her brother, Maximilian von Spee, and his agents communicated with her during her residence here, and caused her to sleep on her rights, caused her to believe that she was being protected, and to believe that her interests were taken care of. Dr. Maximilian, Wilhelm, and Dr. Richter have committed, via instrumentalities of international commerce, a fraudulent scheme (and culpable contacts,contracts, and economic extortion) touching and concerning the co-conservators, and the Connecticut conservatorship and the U.S.  Thus, the defendants, and their actionable conduct, are not tangentially connected to the U.S.  By virtue of their contacts with Felicia Petrov, the co-conservators Constantin and Vladimir Petrov, and the Probate Court at Stamford, the defendants have brought themselves

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

directly within the purview of this Court, and the United States and State of Connecticut by such contacts and misconduct, and must be held to answer in a United States Court.[13]

Accordingly, a Connecticut jury would take interest in passing judgment on this case and it is appropriate to bring this matter before a Connecticut jury.

There are great tax and public policy issues for the U.S. and Connecticut.  Although the defendants' minimize the magnitude of the tax implications (shrugging aside the fact that Felicia's estate would have considerable tax implications for the State and Federal taxing authorities by stating "every probate estate of every citizen…might… have tax implications"), the reality is the defendants perpetrated this fraud upon an elderly and frail Felicia Petrov, and have caused her to rely on the government for her care.  The citizens of Connecticut take an interest in redressing fraud occurring in Connecticut against an elderly citizen, which robs the government of considerable tax revenue while concurrently placing the victim at the mercy of government programs.  The defendants' arguments to the contrary are specious because they minimize the impact of the fraud, and the impact their conduct has had on the community.

**IV.  SURREPLY TO DEFENDANTS' POINT II.  THE DOCTRINE OF INTERNATIONAL COMITY FAVORS RETENTION OF THIS CASE IN THE UNITED STATES.**

This Court has a clean slate before it.  That is, there are no substantive, on the merits decisions which conflict with this Court's able administration of this case.  Contrary to the defendants' Reply (which Reply is insufficient to make up for the defendants' total failure to meet their burden as the moving party), wherein they misstate the nature of the administrative proceedings in Germany, this matter arises in a substantive de novo posture before this Court, and plaintiffs seek necessary and unique relief from this Court.  Thus, the defendants'

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

---

[13] This involves personal presence, phone calls, faxes, emails, wire transfers of money, and travel, using such instrumentalities of interstate and international commerce.

*Surreply by Plaintiffs to Defendants' Reply to Plaintiffs' Opposition to Motion[s] to Dismiss*        Page    39

complaints that this Court will have to engage in a reexamination of "15 reasoned decisions rendered by German courts regarding the matters at issue here," is fundamentally incorrect. The issues presented before this Court have not been presented before a German court for on the merits, in adversary, substantive litigation. There has been no "litigation" in the plain and ordinary sense of the word. Moreover, the defendants, in attempting to construe the plaintiffs' posture in the German proceedings as a complete loss, ignore two Inheritance Certificates that have been issued in favor of Felicia Petrov, and which are believed to be uncontested. Indeed, as to the Inheritance Certificate for Felicia's mother Maria, it is believed her estate was more valuable than her husband August.

The standards for a Court to determine a motion to dismiss on the basis of international comity are stringent. Such a request for dismissal on this basis requires a separate motion and analysis and should be considered only after separate briefing and discovery. In any event, in light of the Court's "virtually unfailing obligation" to exercise jurisdiction, the defendants cannot sustain their request for dismissal on this basis. This is a doctrine that should be applied sparingly, in only discrete situations where a conflict is clear. This is not the case here. The Court will not face any actual or potential conflict with the German court decisions, and is free to retain this case for resolution.[14]

## V.    SUMMARY AND CONCLUSIONS

Given the nature of this case, and the essential importance for Felicia, who is a United States citizen and resident, having her day in court in the United States Forum of her choice,

---

[14] Nor can it be said that the Court will be wasting judicial resources in allowing the translation of essential documents and applying, if necessary, foreign law. These administrative burdens are not so significant such that they implicate the application of the doctrine of international comity here.

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

the strong deference under the U.S. Supreme Court and Second Circuit law, for her choice must be honored.

If not, her rights to seek the property due her, as a von Spee heir, and her rights as a beneficiary to the benefits of the trust and fiduciary property at issue, will never be vindicated, and she will have no meaningful access to justice.

The von Spee defendants will escape with the fruits of their years of fraud and violations of their trust and fiduciary duties.

There have been no adverse, substantive rulings on the merits in Germany as to plaintiffs' rights, nor any other adversary, due process, litigation.

At a minimum, Felicia is entitled to one half of her mother Maria's estate (Hundreds of Millions of Euros).

A precise analysis under Iragorri and Gulf Oil, based as it must be, on the facts of this case, shows the defendants have not met their heavy burden to show such great inconvenience to them and this court, to defeat the plaintiffs' rights to relief in this forum.

Accordingly, the defendants' motion to dismiss on this basis should be denied.

RESPECTFULLY SUBMITTED this 14th day of September, 2007.

WEIDNER & ASSOCIATES, INC.
Attorneys for Plaintiffs

By: /s/ Phillip Paul Weidner
    WEIDNER & ASSOCIATES, INC.
    330 L Street, Suite 200
    Anchorage, AK  99501
    Phone (907) 276-1200
    Fax (907) 278-6571
    E-mail: jgreene@weidner-justice.com
    ABA 7305032
    Admitted Pro Hac Vice

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

CERTIFICATE OF SERVICE

I hereby certify that on September 14, 2007, a copy of the foregoing was served electronically on John T. Morin, Susanne von Türk, Jennifer L. Marlborough, and Robert P. Dolian and a copy mailed to Magistrate Judge Joan Margolis (141 Church St., Rm. 303, New Haven, CT 06510) on September 15, 2007.

/s/ Phillip Paul Weidner

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571